IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EAST TEXAS BAPTIST UNIVERSITY, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-12-3009 |
| § | |
| KATHLEEN SEBELIUS, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

This suit, one of many filed around the country, challenges certain implementing regulations of the Affordable Care Act (ACA). The plaintiffs are nonprofit religious educational institutions alleging that the regulations are unconstitutional because they require the institutions to provide health insurance coverage for abortifacient drugs, related education, and counseling.[1] The plaintiffs allege that their religious beliefs forbid them from supporting abortion in any way and that the regulations violate their rights under the Free Speech Clause, Free Exercise Clause, and Establishment Clause of the First Amendment. They also assert that the regulations violate the Religious Freedom Restoration Act and the Administrative Procedure Act. (Docket Entry No. 1).[2]

The regulations affecting nonprofit educational institutions have not yet been implemented. This case and others raising similar challenges have been inactive for an extended period. Courts

---

[1] The defendants are the U.S. Department of Health and Human Services (HHS) and HHS Secretary Kathleen Sebelius; the U.S. Department of Labor and Labor Secretary Thomas Perez; and the U.S. Department of the Treasury and Treasury Secretary Jacob Lew.

[2] Some of the issues overlap with another group of cases in which the religion-based objections are brought by for-profit corporate entities. *See, e.g.*, *Hobby Lobby Stores, Inc. v. Sebelius*, — F.3d — , 2013 WL 3216103 (10th Cir. June 27, 2013) (en banc); *Conestoga Wood Specialties Corp. v. Sec'y of the U.S. Dep't of Health & Human Servs.*, — F.3d — , 2013 WL 3845365 (3d Cir. July 26, 2013).

have invoked different legal grounds based in part on the need to wait for revisions intended to address the religious groups' concerns. The revised regulations have now been issued and do not moot the legal issues. This and other cases are moving forward.

This memorandum and order addresses Westminster Theological Seminary's motion to intervene. Westminster, a graduate theological seminary in Glenside, Pennsylvania, has moved to intervene as a plaintiff under Rules 24(a)(2) and (b)(1)(B) of the Federal Rules of Civil Procedure. The existing plaintiffs, East Texas Baptist University and Houston Baptist University, both Christian liberal-arts universities in Texas, do not oppose the motion. Westminster asserts that its intervention will not prejudice the government because the existing plaintiffs raise similar claims and significant additional resources are not required to defend against this related claim. (Docket Entry No. 35 at 3). The government argues that Westminster cannot meet the requirements for intervention and that venue would be improper if the court were to allow it. Westminster replied and filed a posthearing memorandum, to which the government responded. (Docket Entry Nos. 35, 38, 48, 58 & 59).[3] This court heard argument on the motion as well.

Based on the pleadings; the motion, response, reply, and supplemental memoranda; the parties' arguments; and the relevant law, this court grants Westminster's motion for permissive intervention. The reasons are explained below.

---

[3] The government also opposed intervention on the ground that this court lacked jurisdiction over the original action. (Docket Entry No. 38 at 3–6). *See also* 7C CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1917 (3d ed. 2012) ("Intervention cannot cure any jurisdictional defect that would have barred the federal court from hearing the original action."). The government previously announced that the former ACA regulations challenged by the original plaintiffs would never be enforced in their current form and that the revised regulations were not yet final. This case was stayed pending the issuance of the final amended regulations. The final regulations have now been issued. To the extent that the government contends that jurisdictional issues remain as to the original plaintiffs, this court will consider those arguments after the government addresses them more fully through a dispositive motion.

**I.      Rule 24 Intervention**

Federal Rule of Civil Procedure 24(a) states:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Westminster's motion to intervene as of right is analyzed under Rule 24(a)(2) because Westminster has not argued that a federal statute gives it a right to intervene. The Fifth Circuit has held that Rule 24(a)(2) applications must meet the following requirements: (1) the intervention application is timely; (2) the applicant has an interest relating to the property that is the subject of the action; (3) the applicant is so situated that the disposition may, as a practical matter, impair or impede the ability to protect that interest; and (4) the applicant's interest is inadequately represented by the existing parties. *See Sierra Club v. City of San Antonio*, 115 F.3d 311, 314 (5th Cir. 1997). "Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 578 (5th Cir. 2007). The Fifth Circuit has stated that "intervention of right must be measured by a practical rather than technical yardstick [and] should generally be allowed where no one would be hurt and greater justice could be attained." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (internal quotation marks, footnotes, and citations omitted).

Even if an applicant fails to meet the requirements to intervene as of right, the court may nonetheless permit intervention under Rule 24(b)(1), which states:

> On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or

3

>       (B) has a claim or defense that shares with the main action a common question of law or fact.

Permissive intervention is appropriate when "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989). "Permissive intervention is wholly discretionary with the district court"; even if the court finds that there is a common question of law or fact or that the Rule 24(b) requirements are otherwise satisfied, the court may deny permission to intervene. *New Orleans Pub. Serv., Inc. (NOPSI) v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984) (quotations and brackets omitted).

Rule 24 generally represents "'an accommodation between two potentially conflicting goals: to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending.'" *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 412 (5th Cir. 1991) (quoting *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969) (en banc)). Because Rule 24 attempts to address a wide variety of situations, "the facts and procedural posture of each case are important, and it is often true that 'general rules and past decisions cannot provide uniformly dependable guides.'" *Id.* (quoting *Smuck*, 408 F.2d at 179).

## II. Analysis

### A. Intervention as of Right

Westminster's application to intervene as of right must first be timely. In deciding timeliness, courts evaluate four considerations: "(1) the length of time [the] applicant[] knew or

should have known of [its] interest in the case; (2) prejudice to existing parties caused by [the] applicant['s] delay; (3) prejudice to [the] applicant[] if [its] motion is denied; and (4) any unusual circumstances." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 433 (5th Cir. 2011) (quotation omitted). "The analysis is contextual; absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

The existing plaintiffs filed their original complaint on October 29, 2012. Until July 31, 2013, the case was stayed pending the government's issuance of the amended ACA regulations. (Docket Entry Nos. 25 & 57). Westminster filed its intervention motion and putative complaint-in-intervention on March 8, 2013, while this case was stayed. Although the government opposes intervention, it does not contest timeliness.

Westminster moved to intervene just over four months after the suit was filed while proceedings were stayed. The timing of Westminster's motion will not prejudice the existing parties. The existing plaintiffs did not file their first amended complaint addressing the revised regulations until August 6, 2013, well after Westminster's intervention motion was filed. The preliminary injunction application and partial summary judgment motion are due by August 30, 2013, and the government's response and cross-motion for summary judgment are due by September 20, 2013. Westminster's intervention should not require modifying existing deadlines, short as they are. Denying Westminster's intervention motion, on the other hand, would delay its ability to challenge the regulations, while it files a new suit and begins anew the process of putting a scheduling order into place. The parties have not identified any unusual circumstances that raise doubts about the timeliness of Westminster's motion. Westminster passes Rule 24(a)(2)'s first requirement.

Westminster also satisfies the second requirement because it has "point[ed] to an interest that is direct, substantial, and legally protectable." *Ross*, 426 F.3d at 757 (quotation and alteration omitted). "This requires a showing of something more than a mere economic interest; rather the interest must be 'one which the *substantive law* recognizes as belonging to or being owned by the applicant.'" *Id.* (emphasis in original) (quoting *NOPSI*, 732 F.2d at 464). "'[T]he intervenor should be the real party in interest regarding [its] claim.'" *Id.* (quoting *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004)). "The 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 n.10 (5th Cir. 1992) (citation omitted). Westminster has a direct and substantial interest in challenging regulations that it asserts would infringe on its religious beliefs. *Cf. Meek v. Metro. Dade Cnty., Fla.*, 985 F.2d 1471, 1480 (11th Cir. 1993) ("[A] movant who shows standing is deemed to have a sufficiently substantial interest to intervene."), *abrogated on other grounds by*, *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1331–32 (11th Cir. 2007). The government contends that Westminster's opposition to the regulations is "no more a direct, substantial, legally protectable interest in these proceedings than in dozens of similar lawsuits filed in jurisdictions across the country, including in Westminster's home state of Pennsylvania." (Docket Entry No. 38 at 8). It is unclear that when, as here, there are multiple suits raising similar legal issues, the putative intervenor must show a greater interest in the suit it has chosen to join than in any of the other suits. The argument appears more appropriately considered as part of Rule 24(a)(2)'s "impairment" requirement.

Westminster's ability to satisfy the remaining requirements for intervention as of right is less clear. The third requirement is that the applicant must be "so situated that the disposition of the

action may, as a practical matter, impair or impede his ability to protect his interest." *Espy*, 18 F.3d at 1204–05. Westminster argues that it will be prejudiced if the existing plaintiffs' claims are decided in its absence because of the potential *stare decisis* effect if Westminster were later to bring similar claims in a separate suit. (Docket Entry No. 35 at 3). Under the current version of Rule 24(a), an applicant does not need to show that it would "be bound by the outcome" of the original parties' suit to meet the impairment requirement. *Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996). "The Fifth Circuit has held that the *stare decisis* effect of an adverse judgment constitutes a sufficient impairment to compel intervention." *Id.* at 109–10 (citing *Espy*, 18 F.3d at 1207). "'[T]he doctrine of *stare decisis* incorporates two principles: (1) a court is bound by its own prior legal decisions unless there are substantial reasons to abandon a decision; and (2) a legal decision rendered by a court will be followed by all courts inferior to it in the judicial system.'" *United States v. Rodriguez-Pacheco*, 475 F.3d 434, 441 (1st Cir. 2007) (quoting 3 J. MOORE ET AL., MOORE'S FEDERAL PRACTICE AND PROCEDURE § 30.10[1] (2006) (footnotes omitted)).

The government argues that *stare decisis* is not a factor here. Westminster does not reside in this district or in the Fifth Circuit, (Docket Entry No. 38 at 10), and "there is no rule of intercircuit *stare decisis*." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 832 (5th Cir. 1998). In the intervention context, the Fifth Circuit has occasionally expanded the concept of *stare decisis* to encompass decisions that future courts might find persuasive rather than binding. *See, e.g.*, *Ceres Gulf*, 957 F.2d at 1204 ("[The applicant's] interest is impaired by the *stare decisis* effect of the district court's judgment, which creates a new cause of action outside agency jurisdiction."). But the parties have not cited, and this court has not found, a case extending the concept of *stare decisis* to include a district court decision that is but one of a large number considering very similar legal issues that will

inevitably be the subject of appellate review.

Westminster cites *Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967), for the proposition that district court judgments may have a *stare decisis* effect. In *Nuesse*, the Wisconsin banking commissioner sought to intervene in a suit brought by a Wisconsin bank against the United States Comptroller of the Currency over a national bank's request for permission to open a nearby branch office. The original suit had been brought in a Washington, D.C. district court. The Court of Appeals for the D.C. Circuit found that denying the commissioner's request for intervention might practically impair its interests because "a decision by the District Court here, the first judicial treatment of this question, would receive great weight, whether the question arose again in this jurisdiction or in the federal court in Wisconsin." *Nuesse*, 265 F.2d at 702. The court explained that the commissioner "might retain the hope of sparking a conflict between circuits, and possibly even Supreme Court resolution. At least in part, it is this fragmented approach to adjudication that the revitalized federal rules seek to avoid." *Id.*

The Fifth Circuit has described the *stare decisis* effect operative in *Nuesse* as "peculiar." *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 846 n. 21 (5th Cir. 1975). And the *stare decisis* effects of a decision in this case in this court does not raise the concerns the *Nuesse* court identified. This court is unlikely to be the first court, or one of the few courts, to examine these questions. This opinion will be but one datapoint that appellate courts will examine as the cases wend their way through the system.

Westminster also contends that denial of its intervention application will practically impair its interests because it might not be able to afford a separate legal challenge to the ACA regulations. Westminster notes that, although it is located in Pennsylvania, its counsel, a member of

Westminster's board of trustees, has agreed to work *pro bono* and lives in this district. (Docket Entry No. 35 at 4). The government responds that the Fifth Circuit has held that "an economic interest alone is insufficient" to justify intervention. *NOPSI*, 732 F.2d at 466. As Westminster correctly notes, however, the Fifth Circuit's distinction between "substantive legal rights" and "purely economic interests" is relevant to the second Rule 24(a) requirement — the applicant's interest — rather than the third requirement — practical impairment.

In other contexts, the Fifth Circuit has refused to consider the location of counsel as a factor in deciding where a case should proceed. *See, e.g.*, *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("[C]onvenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)."). And courts have long refused to consider the economic burden of having to litigate separately as sufficient under Rule 24(a)(2). *See SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1239 (2d Cir. 1973) ("Appellants' essential argument is that if intervention is denied they will be required to bear the financial burden of duplicating the SEC's efforts; and, not having the SEC's investigative staff and resources available to them, they may be unable to develop as complete and reliable a record as they might if intervention were allowed. This is not the sort of adverse practical effect contemplated by Rule 24(a)(2)."). The fact that Westminster would have to file a separate suit and the added burden on counsel that would impose are not the sort of adverse practical effects the rule requires.

The final requirement for intervention of right under Rule 24(a)(2) is that the applicant's interests "may be" inadequately represented by the existing parties. *See Ozee v. Am. Council on Gift Annuities*, 110 F.3d 1082, 1096 (5th Cir. 1997) ("[The applicant] need not show that the existing representation necessarily will be inadequate, but only that it 'may be' so."), *vacated on other*

9

*grounds,* 522 U.S. 1011, 1011 (1997). This burden is "minimal," *Haspel & Davis*, 493 F.3d at 578 (quotation marks and citation omitted), but "cannot be treated as so minimal as to write the requirement completely out of the rule," *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (quotation omitted). When an intervention applicant shares "'the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance.'" *Haspel & Davis*, 493 F.3d at 578–79 (quoting *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir. 1987)).

Westminster contends that the existing plaintiffs do not adequately represent its interests for three reasons: (1) it is a graduate school of theology, while the current plaintiffs are undergraduate liberal-arts schools with religious affiliations, (2) it is affiliated with Reformed Christianity, while the current plaintiffs are members of the Baptist General Convention of Texas, and (3) Westminster's health-care coverage is different in some respects from that of the existing plaintiffs. (Docket Entry No. 35 at 3–4).[4] But it is unclear that these differences are sufficient to make the existing plaintiffs inadequate voices for Westminster's objections to the regulations. While theological differences may affect the types of drugs, devices, and procedures that are challenged, the parties did not identify material differences between Westminster's views and those of the existing plaintiffs. Although there are some differences in insurance, it is unclear that these differences bear in a material fashion on the critical challenges to the ACA.

Although it is doubtful Westminster has met all of the Rule 24(a)(2) requirements, it may

---

[4] Westminster also asserted that the existing plaintiffs could not adequately represent it because, unlike the plaintiffs, it was not protected by the ACA regulations' safe-harbor provision. This distinction is now irrelevant because beginning January 1, 2014, neither the existing plaintiffs nor Westminster will be protected by any safe-harbor provision.

nonetheless intervene if it can satisfy the requirements under Rule 24(b)(1)(B).

### B. Permissive Intervention

The first requirement for permissive intervention is a timely application, which Westminster meets for the reasons previously stated. The second requirement is the presence of a common question of law or fact between the intervenor's claims and those of the existing plaintiffs. Westminster easily satisfies this requirement. Like the existing plaintiffs, Westminster seeks to challenge the ACA preventative services regulations under the Religious Freedom Restoration Act, the First Amendment of the United States Constitution, and the Administrative Procedure Act. The third requirement is the absence of undue prejudice to the rights of the existing parties. Permitting Westminster to intervene is unlikely to delay the resolution of the case or prejudice the existing parties. The original plaintiffs have indicated that they do not oppose Westminster's intervention. Nor has the government shown how it would be prejudiced by litigating Westminster's claims in this suit instead of in a separate suit. It is also appropriate to consider "whether the intervenors' interests are adequately represented by other parties and whether they will significantly contribute to full development of the underlying factual issues in the suit." *NOPSI*, 722 F.2d at 472 (quotation omitted). Although Westminster's and the existing plaintiffs' interests are very similar, Westminster's involvement will add a different perspective that will contribute to the development of the issues.

The primary objection the government raises to intervention is that venue in this district is improper as to Westminster. After careful review, the court concludes that venue does not make permissive intervention improper.

### C. The Government's Venue Objection

Westminster is located in Pennsylvania and, other than its counsel, has no evident material connection to the Southern District of Texas. The government contends that this court "has discretion to treat the intervenor's claim as if it were a separate suit and may entertain it if it satisfies by itself the requirements of jurisdiction and venue." 7C FEDERAL PRACTICE & PROCEDURE § 1918.

Rule 24 does not address venue. Few courts have considered the relationship between intervention and venue. In *Philadelphia Metal Trades Council v. Allen*, No. 07-CIV-145, 2007 WL 1876791 (E.D. Pa. June 22, 2007), the court held that permissive intervention is improper if venue requirements would have prevented joinder under Rule 19. *Id.* at *3 (relying on 6 MOORE'S FEDERAL PRACTICE § 6-24.22[3] (3d ed. 2007)). This case does not preclude intervention here. Even if the government is correct that the absence of proper venue is a legitimate reason to deny intervention, it has not shown that venue would be improper if Westminster were to intervene.

The existing plaintiffs established venue under 28 U.S.C. § 1391(e)(1), which provides that a civil suit against a federal-government defendant may be filed:

> in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

The government acknowledges that this venue is proper for the existing plaintiffs because they reside in the Southern District of Texas. Under §1391(e)(1), "venue is proper as to all plaintiffs if suit is brought in a district where any one or more of the plaintiffs resides." *Crane v. Napolitano*, 920 F. Supp. 2d 724, 733 (N.D. Tex. 2013) (citations omitted). The fact that venue is proper here for the existing plaintiffs would seem to be enough to make venue proper for Westminster as well. This interpretation is consistent with the purpose of § 1391(e), which is "to make suits by citizens

12

against government agencies and their officials more convenient for plaintiffs." *Dow Chem., USA v. Consumer Prod. Safety Com.*, 459 F. Supp. 378, 384 n.4 (W.D. La. 1978). "Limiting [§] 1391(e) to cases where all plaintiffs reside in the district would frustrate this objective, and encourage multiple litigation[s] involving similar disputes by disparate parties in the already overburdened federal courts." *Id.*

Although the Fifth Circuit has not yet addressed this issue, the Sixth Circuit has noted that interpreting § 1391(e)(1) to provide venue to all plaintiffs as long as one plaintiff resides in a district "is not only the majority view — it is the only view adopted by the federal courts since 1971." *Sidney Coal Co., Inc. v. Soc. Sec. Admin.*, 427 F.3d 336, 345 (6th Cir. 2005) (quotation omitted); *see also Ry. Labor Execs.' Ass'n v. I.C.C.*, 958 F.2d 252, 256 (9th Cir. 1991); *Exxon Corp. v. Fed. Trade Comm'n*, 588 F.2d 895, 898–99 (3d Cir. 1978) ("[R]equiring every plaintiff in an action against the federal government or an agent thereof to independently meet section 1391(e)'s standards would result in an unnecessary multiplicity of litigation. . . . There is no requirement that all plaintiffs reside in the forum district."); *A.J. Taft Coal Co., Inc. v. Barnhart*, 291 F. Supp. 2d 1290, 1302 (N.D. Ala. 2003) ("For over thirty years federal courts have conclusively and consistently held that the statutory language in 28 U.S.C. § 1391(e)(3) regarding the residency of 'the plaintiff' should be interpreted to mean any plaintiff rather than all plaintiffs.") (collecting cases); 14D FEDERAL PRACTICE & PROCEDURE § 3815 ("[T]he courts . . . have held that only one plaintiff need satisfy [§ 1391(e)'s] residency requirement."). Because venue in the Southern District of Texas is proper for the existing plaintiffs, it is also proper for Westminster.

The government also contends that Westminster's intervention "would enable forum shopping, because a party could intervene in a district of its choosing by the simple expedient of

13

choosing a lawyer in this district." (Docket Entry No. 38 at 9–10). While there is some opportunity for forum shopping presented when, as here, cases are pending in courts all over the country in which intervention could be sought, there is no basis in the record to connect Westminster's choice of the Southern District of Texas to any effort to gain an improper advantage.

In short, venue does not make this otherwise proper permissive intervention improper.

### III.    Conclusion

Westminster's motion to intervene is granted. The existing deadlines will not be modified, but Westminster may consult with other parties and propose additional deadlines for its filings.

SIGNED on August 30, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

14