# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| EAST TEXAS BAPTIST UNIVERSITY and HOUSTON BAPTIST UNIVERSITY, <br><br> *Plaintiffs*, <br><br> WESTMINSTER THEOLOGICAL SEMINARY, <br><br> *Plaintiff-Intervenor*, <br><br> v. <br><br> ALEX AZAR, *et. al*, <br><br> *Defendants*. | Civil No. 4:12-cv-03009 <br><br> Hon. Lee H. Rosenthal <br><br> **UNOPPOSED JOINT MOTION OF PLAINTIFFS EAST BAPTIST UNIVERSITY, HOUSTON BAPTIST UNIVERSITY AND WESTMINSTER THEOLOGICAL SEMINARY TO LIFT STAY AND AMEND INJUNCTION** |

**MOTION**

This Court entered an injunction in this case on December 27, 2013, that protected Plaintiffs East Texas Baptist University (ETBU) and Houston Baptist University (HBU), and Plaintiff-Intervenor Westminster Theological Seminary (Westminster) (collectively, "Plaintiffs"), from federal regulations that would have forced them to choose between violating their religious beliefs and paying millions of dollars in yearly fines. Dkt. 134. The Court reached only those claims brought under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* (RFRA). *Id.* On January 21, 2014, the Court entered partial final judgment on the RFRA claims and stayed adjudication of the remaining claims. Dkt. 136. Defendants appealed on February 24, 2014. Dkt. 139.

In the almost five years since then, this case has been on appeal to the Fifth Circuit and to the Supreme Court. During that time, the regulations at issue have been amended multiple times, partly in response to events in this litigation, and continue to be subject to change. Prior to the current government shutdown, the parties agreed to a settlement of all remaining claims in this case. In their written agreements the parties jointly recognized the need to return to this Court so as to: clarify that the injunction in this case applies only to the coverage the Plaintiffs object to; update citations in the injunction to include regulatory changes since December 2013; and to resolve Plaintiffs' outstanding claims.

Plaintiffs therefore move the Court to modify the 2013 injunction to embrace the language specified in the parties' agreements to clarify that the injunction applies to

1

the current and ensuing versions of the regulations at issue and that it applies only to the extent that such regulations would require Plaintiffs to violate their beliefs. This modification—which is reflected in the Proposed Order submitted with this Motion—will correlate this Court's injunction to the scope of injunctions issued in numerous other cases challenging the same regulations and will allow Plaintiffs to dismiss their remaining claims and conclude this case. In accordance with the settlement agreements reached before the shutdown began, Defendants take no position on this motion.

As a necessary antecedent to the modification of the injunction, Plaintiffs also move the Court to formally lift the stay imposed on February 24, 2014 (Dkt. 136). Consistent with the settlement agreements reached before the shutdown began, Defendants likewise take no position on this motion subject to the understanding that lifting the stay does not require Defendants to participate or take any action in the case until the lapse of appropriations is resolved and that Defendants may seek to re-impose a stay based on the lapse in appropriations in the event such participation is warranted or required.

### STATEMENT OF ISSUES AND STANDARD OF REVIEW

Modifying an injunction is appropriate in the case of "a significant change in statutory or decisional law." *Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 741 (5th Cir. 2016) (cleaned up). Since this Court entered a permanent injunction and partial final judgment in 2013, the regulations at issue have changed and Defendants have conceded that the new regulations also violate RFRA. These "significant"

changes of law and fact merit lifting of the stay and modification of this Court's injunction under Fed. R. Civ. P. 60(b)(5).

## NATURE AND STAGE OF THE PROCEEDINGS

This case has been stayed in this Court for almost five years pending an appeal from the partial final judgment entered on February 24, 2014. Dkt. 136. The appeal has now been dismissed, and the parties have entered into settlement agreements. Plaintiffs now seek to modify the injunction in order to adequately protect Plaintiffs and to conform it to Defendants' RFRA concessions and the injunctions entered in parallel cases.

## BACKGROUND

### I.   The HHS Mandate

The Affordable Care Act (ACA) provision at issue in this case mandates that any "group health plan" must provide for certain "preventive care" without "any cost sharing." 42 U.S.C. § 300gg-13(a). The Department of Health and Human Services (HHS) defined women's preventive services to include all FDA-approved contraceptive methods, including drugs and devices such as Plan B and ella, which—according to the FDA's Birth Control Guide—work by preventing implantation "of a fertilized egg in the uterus." This rule did not apply to many health plans, including grandfathered plans, *see* 42 U.S.C. § 18011, and "religious employers" defined by the government to include institutional churches and their dependent organizations, 78 Fed. Reg. 39,890, 39,874 (July 2, 2013).

For religious nonprofits like Plaintiffs, the government created what it called an "accommodation," which required religious objectors to sign authority of their health

3

plans over to their insurer and third-party administrators (TPAs), allowing them to provide the objectionable drugs and devices to their students and employees through their existing health plans. 77 Fed. Reg. 16,501, 16,503 (March 21, 2012). Plaintiffs could not in good conscience facilitate or purchase insurance for drugs or devices that could terminate a human life. Nor could they leave their employees without health insurance and pay the requisite fines. *See, e.g.*, 26 U.S.C. § 4980D(b)(1) ($100/day per person); 26 U.S.C. § 4980H(c)(1) ($2000 per employee, per year). ETBU and HBU thus brought this lawsuit for protection from the fines. Dkt. 1 (complaint filed Oct. 9, 2012).

## II. This litigation

On August 6, 2013, ETBU and HBU filed an amended complaint with 16 counts under RFRA, the Constitution, and the Administrative Procedure Act. Dkt. 61. Westminster filed a similar complaint on September 3, 2013. Dkt. 71. Plaintiffs filed motions for partial summary judgment on August 30, 2013, and September 9, 2013. Dkts. 69, 75, and the government filed a cross-motion for summary judgment on September 20, 2013. Dkt. 78.

On December 27, 2013, this Court granted partial summary judgment in favor of Plaintiffs on their RFRA claims and enjoined the then-current version of the mandate. Dkts. 133-34. The order stated that "[d]efendants are enjoined and restrained from enforcing or implementing the challenged regulations, which require the prevailing plaintiffs or, upon plaintiffs' execution of a self-certification, their insurer or third-party administrator to provide, payments for certain approved emergency-contraceptive drugs or devices." Dkt. 134. Upon Plaintiffs' unopposed

4

motion, that order was converted to a permanent injunction and partial final judgment on January 21, 2014. Dkt. 136. Defendants appealed. A panel of the Fifth Circuit reversed. *E. Tex. Baptist Univ. v. Burwell*, 793 F.3d 449, 459 (5th Cir. 2015). The Fifth Circuit stayed the mandate pending an appeal to the Supreme Court. *See* Order granting motion to stay mandate, *E. Tex. Baptist Univ. v. Burwell*, 793 F.3d 449 (No. 14-20112) (Oct. 7, 2015). Plaintiffs sought review at the Supreme Court. The Supreme Court granted certiorari. *E. Tex. Baptist Univ. v. Burwell*, 136 S. Ct. 444 (2015). At the Supreme Court, the Defendants reversed themselves on key positions they had represented to this Court and to the Fifth Circuit:

First, the government admitted that the "accommodation" required contraceptive coverage to be "part of the same plan as the coverage provided by the employer," Br. for the Resp'ts at 38, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418) (quotations omitted).[1] Thus, it removed any basis for the Fifth Circuit's holding that the accommodation did not impose a substantial burden on the religious exercise of objecting employers. *See also* Tr. of Oral Arg. at 60-61, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418) (Chief Justice Roberts: "You want the coverage for contraceptive services to be provided, I think as you as it said, seamlessly. You want it to be in the one insurance package. . . . Is that a fair understanding of the case?"; Solicitor General Verrilli: "I think it is one fair understanding of the case."); *id.* at 61 (government "would be content" if Court would "assume a substantial burden" and rule only on the government's strict scrutiny affirmative defense).

---

[1] At the Supreme Court, this case was consolidated with cases from the Third Circuit, the Tenth Circuit, and the DC Circuit.

5

Next, the government made further concessions that fatally undermined its strict scrutiny affirmative defense. The Defendants admitted to the Supreme Court that it does not matter where the contraceptive coverage comes from and that women who do not receive contraceptive coverage from their employer can "ordinarily" get it from "a family member's employer," "an Exchange," or "another government program." Br. for the Resp'ts at 65, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418). Indeed, these are the same alternatives available to women whose employers are exempted from the mandate for entirely secular reasons. The government also acknowledged that the mandate "could be modified" to avoid forcing religious organizations to carry the coverage themselves, Suppl. Br. for the Resp'ts at 14-15, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418), thereby conceding the "least restrictive means" argument.

As a result of these concessions, on May 16, 2016, the Supreme Court vacated the Fifth Circuit's opinion and remanded the case to the Fifth Circuit so that the parties could be "afforded an opportunity to arrive at an approach going forward" that both "accommodates [the Plaintiffs'] religious exercise" and ensures that "women covered by [their] health plans 'receive full and equal health coverage, including contraceptive coverage.'" *Zubik v. Burwell*, 136 S. Ct. 1557, 1560 (2016).

### III.   New regulations

Since this Court's injunction in 2013, the "challenged regulations" referred to in this Court's order have changed. In 2014, the government issued new regulations that superseded the 2012 versions and would allow Plaintiffs to inform the government that they were allowing their insurers and third-party administrators to use their

6

plans rather than informing the insurers directly. 79 Fed. Reg. 51,092 (Aug. 27, 2014). This did not change the moral analysis for Plaintiffs, and the case continued. In 2015, following the Supreme Court's decision in *Hobby Lobby Stores, Inc.* v. *Burwell*, 134 S. Ct. 2751 (2014), the Defendants expanded the regulations to include closely-held for-profit entities. 80 Fed. Reg. 41,318 (July 14, 2015).

Following the Supreme Court's order in *Zubik*, the Defendants and religious objectors returned to the lower courts and conferred about possible resolutions that would not violate the objectors' religious liberty. In late 2017, the Defendant Departments issued Interim Final Rules (IFR) revising their stance on the accommodation. 82 Fed. Reg. 47,792 (Oct. 13, 2017). The Departments concluded that requiring objecting religious organizations to comply with the mandate "constituted a substantial burden on the religious exercise of many" religious organizations. *Id.* at 47,806. Since requiring "compliance through the mandate or accommodation . . . did not serve a compelling interest and was not the least restrictive means of serving a compelling interest," the Departments concluded that "requiring such compliance led to the violation of RFRA in many instances." *Id.* In order to genuinely accommodate religious organizations' objections, the Departments expanded the "religious employer" exemption to the Mandate to include "all bona fide religious objectors." *Id.*

At least eight lawsuits were then filed against the IFR, arguing that the IFR is unconstitutional and was issued without following the procedures required by the

Administrative Procedure Act.[2] Two courts have now issued nationwide preliminary injunctions against the expanded religious exemption on APA grounds, *Pennsylvania v. Trump*, No. 2:17-cv-4540, 2017 WL 6398465 (E.D. Pa. Dec. 15, 2017); *California v. HHS*, No. 4:17-cv-5783, 2017 WL 6524627 (N.D. Cal. Dec. 21, 2017), although one of those injunctions was later narrowed on appeal, *see California v. Azar*, No. 18-15144, 2018 WL 6566752 (9th Cir. Dec. 13, 2018). Both courts stated that their rulings should not impact existing litigation. *Pennsylvania*, 2017 WL 6398465, at *21; *California*, 2017 WL 6524627, at *17. Meanwhile, the Defendant Departments finalized the IFR in a final rule that will become effective on January 14, 2019. 83 Fed. Reg. 57,536 (Nov. 15, 2018). But motions to enjoin the final rule are currently pending before the same courts that have already enjoined the IFR. *See Pennsylvania v. Trump*, No. 2:17-cv-4540, Dkt. 90 (E.D. Pa. Dec. 17, 2018); *California v. HHS*, No. 4:17-cv-5783, Dkt. 174 (N.D. Cal. Dec. 19, 2018).

With the IFR enjoined, the currently operative version of the regulations is the 2014 mandate that would require Plaintiffs to choose between practicing their faith and facing millions of dollars in fines. As a result, the parties here agreed to settle the claims, agreeing that the Defendants would dismiss their appeal at the Fifth Circuit and jointly recognizing the need to return to this Court so as to: clarify that

---

[2] *See ACLU v. Azar*, No. 4:17-cv-5772 (N.D. Cal. filed Oct. 6, 2017); *California v. Azar*, No. 4:17-cv-5783 (N.D. Cal. filed Oct. 6, 2017); *Massachusetts v. HHS*, No. 1:17-cv-11930 (D. Mass. filed Oct. 6, 2017); *Washington v. Trump*, No. 2:17-cv-01510 (W.D. Wash. filed Oct. 9, 2017); *Medical Students for Choice v. Wright*, No. 1:17-cv-2096 (D.D.C. filed Oct. 10, 2017); *Pennsylvania v. Trump*, No. 2:17-cv-4540 (E.D. Pa. filed Oct. 11, 2017); *Campbell v. Trump*, No. 1:17-cv-2455 (D. Colo. filed Oct. 13, 2017); *Shiraef v. Azar*, No. 3:17-cv-0817 (N.D. Ind. filed Oct. 31, 2017).

the injunction in this case applies only to the coverage the Plaintiffs object to; update citations in the injunction to include regulatory changes since December 2013; and to resolve Plaintiffs' outstanding claims. The Fifth Circuit appeal was accordingly dismissed on January 3, 2019. Dkt. 155. As reflected in the Proposed Order submitted alongside this motion, the injunction should be modified for two purposes: (1) to clarify that it applies only to coverage to which Plaintiffs have a religious objection; and (2) to clarify that the injunction extends beyond the original regulations as they existed when Plaintiffs filed their Amended Complaints and applies to the current and ongoing versions of the regulations at issue. Upon modification of the injunction, Plaintiffs have agreed to move to dismiss their remaining claims. The parties' settlement agreements specify the specific language of injunctive relief that Plaintiffs are proposing and on which the government agrees to take no position.

## ARGUMENT

The current injunction states: "Any party may seek modification of this order, by written motion and for good cause." Dkt. 134. Good cause exists to modify the injunction in order to clarify that the injunction applies only to coverage which violates Plaintiffs' religious beliefs, and that the injunction continues to apply to the revised regulations. Per the parties' settlement agreements, Plaintiffs therefore seek to add the following language to the injunction:

> The Departments, their agents, officers, and employees are enjoined and restrained from any effort to apply or enforce the substantive requirements imposed in 42 U.S.C. § 300gg-13(a)(4) as those requirements relate to provision of contraceptive coverage services which violate East Texas Baptist University's, Houston Baptist University's, or Westminster Theological Seminary's conscience, and are enjoined and restrained from pursuing, charging, or assessing penalties,

9

> fines, assessments, or any other enforcement actions for noncompliance related thereto, including those found in 26 U.S.C. §§ 4980D and 29 U.S.C. §§ 1132, 1185d and including, but not limited to, penalties for failure to offer or facilitate access to religiously-objectionable contraceptives, procedures, and related education and counseling, against East Texas Baptist University, Houston Baptist University, and Westminster Theological Seminary and their insurers and third-party administrators, as their conduct relates to East Texas Baptist University's, Houston Baptist University's, or Westminster Theological Seminary's health plans.

This language is also set forth in the Proposed Order submitted alongside this Motion.

To modify an injunction, Federal Rule of Civil Procedure 60(b)(5) allows that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment [when] . . . it is no longer equitable that the judgment should have prospective application." Fed. R. Civ. P. 60(b)(5). Courts agree that Rule 60(b)(5) is the appropriate rule for modifying an ongoing injunction "regardless of whether the modification expands restrictions or eliminates restrictions in the injunction." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189-90 (5th Cir. 2008). A modification to an injunction is appropriate in the case of "a significant change . . . in [statutory or decisional] law." *Cooper*, 820 F.3d at 741 (amendments in original); *see also Horne v. Flores*, 557 U.S. 443, 447 (2009) ("significant change either in factual conditions or in law" warrants modification of injunction under Rule 60(b)(5)) (internal quotation marks omitted).

The primary factual difference between when the injunction was issued in 2013 and today is that the Defendants modified the regulations since the injunction, and the Defendants have now admitted that the regulations in their current form constitute a substantial burden on the Plaintiffs' religious beliefs and violate RFRA.

10

*See* 82 Fed. Reg. at 47,806. The numerous changes to the regulations constitute a significant change in the law warranting an injunction that will prospectively protect Plaintiffs. *See, e.g.*, 79 Fed. Reg. 51,092; 82 Fed. Reg. 47,792. These changes in the facts and the law warrant a change in the injunction such that the Plaintiffs are protected prospectively from the mandate. As reflected in the Proposed Order, the injunction should clarify that it only applies to drugs and services to which Plaintiffs object.

Such a modified injunction would also align this Court's injunction with the injunctions issued by numerous other courts in the wake of Defendants' concessions, which include language similar to that of the Proposed Order submitted alongside this Motion.[3]

---

[3] *See, e.g.*, *Wheaton Coll. v. Azar*, No. 13-8910 (N.D. Ill. Feb. 22, 2017), Dkt. 119 (issuing permanent injunction including this language: "The Court therefore orders that Defendants, their agents, officers, and employees are enjoined and restrained from any effort to apply or enforce the substantive requirements imposed in 42 U.S.C. § 300gg-13(a)(4) as those requirements relate to provision of contraceptive coverage services which violate Wheaton College's conscience, and are enjoined and restrained from pursuing, charging, or assessing penalties, fines, assessments, or any other enforcement actions for noncompliance related thereto, including those found in 26 U.S.C. §§ 4980D, 4980H, and 29 U.S.C. §§ 1132, 1185d and including, but not limited to, penalties for failure to offer or facilitate access to religiously-objectionable contraceptives, procedures, and related education and counseling, against Wheaton College and its insurers and third-party administrators, as their conduct relates to Wheaton College's health plans."), https://s3.amazonaws.com/becketnewsite/Wheaton-Permanent-Injunction.pdf; *Colo. Christian Univ. v. Azar*, No. 13-02105 (D. Colo. July 11, 2018), Dkt. 84 (similar); *Ave Maria Sch. of Law v. Azar*, No. 13-00795 (M.D. Fla. July 11, 2018), Dkt. 68 (similar); *Ave Maria Univ. v. Azar*, No. 13-00630 (M.D. Fla. July 11, 2018), Dkt. 72 (similar); *Geneva Coll. v. Azar*, No. 12-00207 (W.D. Pa. July 5, 2018), Dkt. 153 (similar); *Dordt Coll. v. Azar*, No. 13-04100 (N.D. Iowa June 14, 2018), Dkt. 85 (similar); *Grace Schs. v. Azar*, No. 12-00459 (N.D. Ind. June 1, 2018), Dkt. 114 (similar); *Little Sisters of the Poor Home for the Aged, Denver, Colo. v. Azar*, No. 13-02611 (D. Colo. May 29, 2018), Dkt. 82 (similar); *S. Nazarene Univ. v. Azar*, No. 13-01015 (W.D. Okla. May 15, 2018), Dkt. 109 (similar); *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 12-00092 (E.D. Mo. Mar. 28, 2018), Dkt. 160 (similar);

## CONCLUSION

For the foregoing reasons, the Court should lift the stay and issue a modified permanent injunction as reflected in the Proposed Order.

> Respectfully submitted,
>
> s/*Eric C. Rassbach*
> Eric C. Rassbach (Texas Bar No. 24013375;
>   S.D. Texas Bar No. 872454)
>   *Attorney in charge*
> Diana M. Verm
>   *Of Counsel*
>   (Admitted *pro hac vice*)
> Joseph C. Davis
>   *Of Counsel*
>   (Admitted *pro hac vice*)
> The Becket Fund for Religious Liberty
> 1200 New Hampshire Ave. N.W.,
> Suite 700
> Washington, DC 20036
> Tel.:  (202) 955-0095
> *erassbach@becketlaw.org*
>
> *Counsel for Plaintiffs*
>
> /s/  Kenneth R. Wynne
> Kenneth R. Wynne (Texas Bar No. 22110000;
>   Fed. Bar No. 837)
>    *Attorney in charge*
> Burdine Wynne, L.L.P.
> 1021 Main St., Suite 1275
> One City Centre
> Houston, TX 77002
> (713) 227-8835
> *kwynne@burdinewynne.com*
>
> *Counsel for Plaintiff-Intervenor Westminster Theological Seminary*

---

*Reaching Souls Int'l, Inc. v. Sebelius*, No. 13-01092 (W.D. Okla. Mar. 15, 2018), Dkt. 95 (similar); *Catholic Benefits Ass'n v. Hargan*, No. 14-00240 (W.D. Okla. Mar. 7, 2018), Dkt. 184 & No. 14-00685 (W.D. Okla. Mar. 7, 2018), Dkt. 79 (similar).

Dated: January 10, 2019

**CERTIFICATE OF SERVICE**

I certify that on January 10, 2019, the foregoing document was served on counsel for all parties by means of the Court's ECF system.

/s/ *Eric C. Rassbach*
Eric C. Rassbach
